UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TODD EFHYMIOS JOHNSON *and*
ANNA-LIDA PERDIOU,

Plaintiffs,

-v-

GEORGIA PAPAGIANNI *and*
FIDELITY BROKERAGE SERVICES LLC,

Defendants.

---

25 Civ. 3830 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

This case arises out of the alleged failure by a client (defendant Georgia Papagianni) to pay her lawyers (plaintiffs Todd Efhymios Johnson and Anna-Lida Perdiou) for their legal services in securing for her a more than $8 million brokerage account she inherited.  Plaintiffs brought claims of breach of contract, quantum meruit, and unjust enrichment.  Salient here, they seek attachment of funds in the brokerage account (the "Fidelity Account") now belonging to Papagianni and held by defendant Fidelity Brokerage Services LLC ("Fidelity").

On July 16, 2025, the Court granted plaintiffs' *ex parte* application for attachment of the Fidelity Account.  Plaintiffs now move to confirm the attachment under Federal Rule of Civil Procedure 64 and New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") § 6201(1).  For the reasons that follow, the Court grants that motion.

## I.    Background

### A.    The Parties

Johnson is an attorney authorized to practice law in New York.  Dkt. 1 ("Compl.") ¶ 8. As of the filing of the Complaint, he resided in the United Kingdom on a temporary skilled

worker visa.  Dkt. 16 ("Johnson Suppl. Decl.") ¶¶ 3–4.  He maintains a New York residence and driver's license, and votes in New York.  *Id.* ¶¶ 5–6; Dkt. 11 ("Johnson Decl.") ¶ 2.

Perdiou is an attorney authorized to practice law in Greece.  Compl. ¶ 9.  She is a Greek citizen who resides in Greece.  *Id.*

Papagianni is a Greek citizen who resides in Greece.  *Id.* ¶ 10.

Fidelity is a multinational corporation.  *Id.* ¶ 11.  The Complaint alleged that Fidelity is headquartered in Rhode Island.  *Id.*  In a supplemental memorandum of law, however, plaintiffs stated that Fidelity is a Massachusetts corporation with its principal place of business in Massachusetts.  Dkt. 14 ("Jurisdiction Mem.") at 5.

### B.    Factual Background[1]

On November 28, 2019, Papagianni signed an agreement (the "initial agreement") retaining plaintiffs (and another attorney, Charikleia Daouti, who is not party to this action) to handle an inheritance-related representation.  Compl. ¶¶ 17–18.  In that action, Papagianni sought the recognition of the holographic will of decedent Anna Vegleri, which named Papagianni as its sole beneficiary.[2]  *Id.* ¶ 1.  Recognition of the will stood to establish Papagianni's entitlement to a brokerage account containing more than $8 million.  *Id.*

The initial agreement stated that plaintiffs were retained

> to conclude and complete either by judicial and or extrajudicial action(s), until its final resolution at the Supreme Court level, if need arises, the case for the acknowledgment of the inheritance rights of [Papagianni] in the estate of Anna Vegleri . . . and/or until the collection of all necessary documents for the acknowledgment of the inheritance rights of [Papagianni] in the estate of Anna Vegleri.

---

[1] The Court draws the facts principally from the Complaint, Dkt. 1; the documents incorporated by reference or integral to the Complaint, *id.*; and the declarations and exhibits in support of plaintiffs' *ex parte* application for attachment, Dkts. 9, 11–12.

[2] A holographic will is one that is unattested, handwritten, and signed by the testator.

Dkt. 1-5 ("Agreements") at 2.  As to compensation for legal work, it stated that plaintiffs would each "receive fees of 5% plus VAT [*i.e.*, value-added tax], if applicable, on the gross amount that will be inherited by [Papagianni]." *Id.*  Such fees would be "deposited to an institution legally operating in Greece or abroad, which will be identified by the Attorneys, within one (1) month from completion of the case file and acknowledgement of the rights of [Papagianni] in the estate of the deceased Anna Vegleri." *Id.* at 3.  However, the agreement stated, if plaintiffs failed to achieve recognition of Papagianni's inheritance rights, they "will not be entitled to any fees." *Id.*

On June 24, 2021, the Court of Peace of Athens (the "Greek court"), acting on an application by Papagianni, declared Vegleri's holographic valid and appointed Papagianni as Vegleri's lawful testamentary heir.  Compl. ¶ 21; *see* Dkt. 1-6 ("Greek Judgment") at 3.

On January 24, 2022, Papagianni signed an amendment to the initial agreement (the "amended agreement," and together with the initial agreement, the "Agreements"), which defined several terms in the initial agreement and revised the compensation provisions to state that plaintiffs will receive "receive fees of 5% plus VAT, if applicable, on the *[t]otal gross amount* that will be inherited by [Papagianni]." *Id.* at 7 (emphasis added).  The amended agreement defined the total gross amount as the Fidelity Account's balance on the transfer date (the date of Fidelity's notification to Papagianni that the brokerage account had been transferred to her name) plus "the average of the closing price of each stock held in the [Fidelity Account] at the Transfer date and each of the previous 19 trading days, or . . . the average of the 20 previous trading days." *Id.*  It stated that the attorneys' fees "will be deposited . . . within one (1) month from the date that [Papagianni] will have the right to withdraw cash amounts from the Brokerage account." *Id.*  The amended agreement also provided: "The remaining provisions of the [initial agreement] remain in full force and effect." *Id.*

On April 13, 2022, in an action brought by plaintiffs on behalf of Papagianni, the Delaware Court of Chancery found the Greek Judgment to be "valid and enforceable," and ordered that Fidelity "shall transfer all the assets held in [Vegleri's] Account to [Papagianni's] Fidelity brokerage account ending in x3822." Compl. ¶ 20; *see* Dkt. 1-7 ("Delaware Judgment") at 3–4.

On July 26, 2022, Johnson, Papagianni, and Nikos Trivas—who is alleged to be Papagianni's significant other—exchanged messages via Viber, a calling and messaging app, about payment for the legal services rendered in connection with Papagianni's inheritance. Compl. ¶ 23. Trivas wrote: "We agree on the calculation of the fee. Can you send me the exact steps we need to take to a) log into the account to see what is there and b) make sales?" Dkt. 1-9 ("Viber Chat") at 3.

On August 8, 2022, Fidelity sent a letter to Papagianni confirming that the account in Papagianni's name, ending in x3822, had a value of $8,550,954.84. Compl. ¶ 24; Dkt. 1-8 ("Fidelity Letter"). The letter stated: "You may withdraw any amount up to and including the full value of the account(s), pending the settlement of any applicable liquidating trade transactions." Fidelity Letter.

As of May 8, 2025, when the Complaint was filed, plaintiffs allegedly had not received payment from Papagianni for the legal services that they provided. Compl. ¶ 29. The Complaint alleges that, as of that date, Papagianni owed plaintiffs $841,489.77 in unpaid legal fees. *Id.*

**C.    Procedural History**

On May 8, 2025, plaintiffs initiated this action. Dkt. 1. The case was initially assigned to the Honorable Mary Kay Vyskocil.

On June 11, 2025, plaintiffs filed an *ex parte* application for attachment, Dkt. 4 ("Application"); a supporting memorandum of law, Dkt. 9; and declarations by Johnson, Dkt. 11, and Perdiou, Dkt. 12 ("Perdiou Decl."). The Application sought prejudgment attachment of $1 million of assets held in the Fidelity Account. Application at 18.

That day, Judge Vyskocil issued an order to show cause with respect to subject matter jurisdiction because the Complaint had failed to identify Johnson's domicile or allege the citizenship of the members of Fidelity, an LLC. Dkt. 13 at 2–3. On June 13, 2025, plaintiffs filed a supplemental memorandum of law, with accompanying exhibits, as to the citizenship of Johnson and Fidelity. Dkt. 14. On June 18, 2025, plaintiffs filed a declaration by Johnson as to the same. Dkt. 16.

On July 8, 2025, the case was reassigned to this Court. On July 16, 2025, the Court granted the Application. Dkt. 19-3 ("Attachment Order"). It ordered, *inter alia*, that the amount to be secured by the Attachment Order shall be $1 million; that the sheriff of New York City and/or the United States Marshal for the Southern District of New York shall levy upon funds, monies, property and/or interests held in the account held by Papagianni at Fidelity ending in x3822 as will satisfy the sum of $1 million; and that plaintiffs shall post an undertaking in the form of a bond in the amount of $5,000 as security. *Id.* at 9–10.

On August 1, 2025, plaintiffs moved to confirm the Attachment Order. Dkt. 19-2 (the "Motion" or "Mot."). Plaintiffs relied on the declarations adduced in support of the Application and additional exhibits. Dkt. 19. On September 12, 2025, Papagianni requested an extension of time to oppose the Motion, Dkt. 26, which the Court granted on September 16, 2025, Dkt. 29. On October 10, 2025, Papagianni opposed the Motion, Dkt. 30 ("Opp'n"), and filed supporting declarations, Dkts. 30-1 ("Papagianni Decl."), 30-6 ("Katsireas & Katsaros Decl."), and exhibits.

On October 24, 2025, plaintiffs filed declarations in reply. Dkts. 31 ("Whitehorn Decl."), 32 ("Fotopoulou Decl.").

## II.    Jurisdiction

Papagianni argues that the Court lacks subject matter jurisdiction over this action and personal jurisdiction over Papagianni. The Court considers each argument in turn.

### A.    Subject Matter Jurisdiction

Papagianni argues that the Court lacks subject matter jurisdiction over this action, which brings state-law claims and thus is solely based on diversity of citizenship jurisdiction, because Papagianni does not have contacts with New York, the Agreements were signed in Greece, and the Greek court has jurisdiction over the Agreements. Opp'n at 10–11.[3] Plaintiffs counter that there is diversity jurisdiction because the parties are completely diverse and the amount-in-controversy exceeds $75,000. Jurisdiction Mem. at 5–6.

Plaintiffs are correct. Diversity jurisdiction under 28 U.S.C. § 1332 requires (1) that the amount in controversy exceed $75,000 and (2) "complete diversity between all plaintiffs and defendants." *Pampillonia v. RJR Nabisco Inc.*, 138 F.3d 459, 460 (2d Cir. 1998). Both requirements are satisfied here. The amount in controversy is at least $841,489.77—well above the statutory threshold. Compl. ¶ 6. And there is complete diversity. Because citizenship was not adequately alleged in the Complaint, *see* Dkt. 13, the Court reviews here the citizenship of the parties.

As for plaintiffs, Perdiou is a citizen of Greece and Johnson is a citizen of New York. Compl. ¶¶ 8–9. Although Johnson, at the time of filing, resided in the United Kingdom on a

---

[3] In so arguing, Papagianni appears to confuse the standards for subject matter and personal jurisdiction. *See infra* pp. 9–10.

temporary skilled worker visa, he attested that: New York is his permanent domicile; he intended

to return to his apartment in Manhattan upon the expiration of his visa in November 2025; and he

was in the United Kingdom on temporary assignment for his law firm, Watson Farley &

Williams LLP, which is headquartered in New York with offices in London. Johnson Suppl.

Decl. ¶¶ 2–5. He also attested that, during his period of United Kingdom residency, he

maintained a driver's license in New York and continued to vote in New York. *Id.* ¶ 6; Compl.

¶ 8. Because, at the time of filing, New York was Johnson's "true, fixed, and permanent home"

to which he had "the intention of returning," it is his domicile for diversity purposes. *Jones v.*

*Wide World of Cars, Inc.*, 820 F. Supp. 132, 135 (S.D.N.Y. 1993); *see also Borderud v.*

*Riverside Motorcars, LLC*, No. 18 Civ. 1291, 2020 WL 2494760, at *7 (D. Conn. May 13, 2020)

("Possession of a temporary visa while residing in a foreign country does not necessarily indicate

a domicile in that country because the temporary nature of the visa does not equate to permanent

residence.").

    As for defendants, Papagianni is a citizen of Greece and Fidelity is a citizen of

Massachusetts. Compl. ¶ 10; Jurisdiction Mem. at 5. The Complaint originally alleged that

Fidelity is a citizen of Rhode Island. Compl. ¶ 11. But, in response to the order to show cause

issued by Judge Vyskocil, plaintiffs stated that Fidelity, which "takes the citizenship of each of

its members" as a limited liability company, *Bayerische Landesbank v. Aladdin Cap. Mgmt.*

*LLC*, 692 F.3d 42, 49 (2d Cir. 2012), is in fact a citizen of Massachusetts. Jurisdiction Mem.

at 5.[4] Plaintiffs filed exhibits reflecting that Fidelity is a wholly owned subsidiary of Fidelity

---

[4] "[A] jurisdictionally defective complaint can be regarded as satisfactorily amended if the record as a whole establishes the existence of the required diversity of citizenship between the parties." *Baer v. United Servs. Auto. Ass'n*, 503 F.2d 393, 397 (2d Cir. 1974).

Global Brokerage Group LLC ("Fidelity Global"), Dkt. 14-3, which, in turn, is a citizen of Massachusetts.[5]  Accordingly, the Court finds that Fidelity is a citizen of Massachusetts.[6]

Because there are "aliens . . . on both sides of the litigation along with fully diverse domestic opposing parties," there is complete diversity of citizenship.  *Hebei Tiankai Wood & Land Constr. Co. v. Chen*, 348 F. Supp. 3d 198, 205 (E.D.N.Y. 2018); *see* 28 U.S.C. § 1332(a)(3) (diversity exists in suits between "citizens of different States and in which citizens or subjects of a foreign state are additional parties").  This is not a case where "diversity is lacking" because "the only parties are foreign entities, or . . . on one side there are citizens and aliens and on the opposite side there are only aliens."  *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).[7]  The requirements of § 1332 are thus satisfied, and the Court has subject matter jurisdiction over this dispute.

### B.    Jurisdiction Over Papagianni and/or the Fidelity Account

Papagianni argues that personal jurisdiction is lacking because she is a Greek citizen, does not transact any business in New York, and does not maintain a residence or any other bank

---

[5] As a corporation, Fidelity Global "is a citizen of its state of incorporation and of its principal place of business."  *Dos Santos v. Assurant, Inc.*, 625 F. Supp. 3d 121, 136 (S.D.N.Y. 2022). Because Fidelity Global is incorporated, and has its chief executive office, in Massachusetts, it is a citizen of Massachusetts. Dkt. 14-4; *see also Dos Santos*, 625 F. Supp. 3d at 136 (the "principal place of business 'should normally be the place where the corporation maintains its headquarters'" (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010))).

[6] This conclusion aligns with *Bey v. Fidelity Investments LLC*, No. 24 Civ. 317, 2024 WL 4250329, at *2–3 (E.D.N.Y. Aug. 28, 2024), which found Fidelity a citizen of Massachusetts.

[7] Diversity is not destroyed by the presence on both sides of the case of foreign citizens of the same country.  *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 229 (S.D.N.Y. 1994) (noting rationale of complete diversity requirement "clearly does not extend to justify a complete diversity requirement with respect to alien parties").

account in New York other than the Fidelity Account.  Opp'n at 9.  Opposing this conclusion,
plaintiffs refer the Court to an earlier memorandum of law, *see* Jurisdiction Mem., "for all issues
relating to jurisdiction," Whitehorn Decl. ¶ 16.  That memorandum, however, did not address
personal jurisdiction.[8]

### 1.    Personal Jurisdiction

There are "two categories of personal jurisdiction: general and specific personal
jurisdiction." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (cleaned up).
Salient here, specific personal jurisdiction "subjects a defendant to suit only on claims that arise
out of or relate to the defendant's conduct in the forum." *Vasquez v. Hong Kong & Shanghai
Banking Corp.*, 477 F. Supp. 3d 241, 251–52 (S.D.N.Y. 2020); *see also Daimler AG v. Bauman*,
571 U.S. 117, 127 (2014).  The exercise of specific jurisdiction must have a "statutory basis" and
"comport with constitutional due process principles." *Davis v. Am. Broad. Co.*, No. 22
Civ. 5944, 2024 WL 1178014, at *7 (S.D.N.Y. Mar. 19, 2024) (quoting *Waldman v. Palestine
Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016)).  New York's long-arm statute identifies four
categories of conduct that can justify exercise of specific personal jurisdiction over a
defendant.  *See* N.Y. C.P.L.R. § 302(a).  Only one—§ 302(a)(1)—is potentially applicable here.

Section 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-
domiciliary . . . who in person or through an agent transacts any business within the state or
contracts anywhere to supply goods or services in the state."  Thus, to establish personal
jurisdiction on this basis, "two requirements must be met: (1) [t]he defendant must have
transacted business within the state; and (2) the claim asserted must arise from that business

---

[8] In assessing jurisdiction, the Court applies New York law.  *Agency Rent A Car Sys., Inc. v.
Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) ("A court sitting in diversity applies the
law of the forum state in determining whether it has personal jurisdiction over the defendants.").

activity." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).

The Fidelity Account is Papagianni's only contact with New York. Papagianni Decl. ¶ 4. "[M]aintenance of a bank account in New York is usually insufficient to confer personal jurisdiction over a non-domiciliary defendant, even in suits arising from the account." *Societe Generale v. Fla. Health Scis. Ctr., Inc.*, No. 3 Civ. 5615, 2003 WL 22852656, at *4 (S.D.N.Y. Dec. 1, 2003). In cases finding personal jurisdiction based on a bank account, defendants had other New York contacts, *id.* (collecting cases), or repeatedly used a correspondent account to take advantage of "New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States," *Licci*, 732 F.3d at 171 (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012)). Here, in contrast, Papagianni is not alleged to have engaged in any transactions arising out of the Fidelity Account or otherwise availed herself of New York law. Accordingly, the Court lacks personal jurisdiction over Papagianni. *See, e.g.*, *Krepps v. Reiner*, 414 F. Supp. 2d 403, 408 (S.D.N.Y. 2006) (maintenance of New York bank account "does not confer jurisdiction" over defendant); *Moscato v. Techs., Inc.*, No. 4 Civ. 2487, 2005 WL 146806, at *3 (S.D.N.Y. Jan. 21, 2005) (same); *see also Timothy Coffey Nursery Landscape Inc. v. Soave*, 760 F. App'x 58, 60 (2d Cir. 2019) (summary order) ("'essentially adventitious' use of a New York bank account does not establish personal jurisdiction" (quoting *Licci*, 20 N.Y.3d at 338)).

### 2.    *Quasi in Rem* Jurisdiction

"Where a court lacks personal jurisdiction over a party, jurisdiction may be established 'based on the court's power over property within its territory.'" *Glencore AG v. Bharat Aluminum Co.*, No. 10 Civ. 5251, 2010 WL 4323264, at *5 (S.D.N.Y. Nov. 1, 2010) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 199 (1977)). "[I]n order to justify an exercise of jurisdiction in rem, the basis for jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in a thing." *Shaffer*, 433 U.S. at 207 (cleaned up). "The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in [*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)]." *Id.* That analysis requires assessing "the nature and quality of the defendant's contacts with the State." *Banco Ambrosiano, S.P.A. v. Artoc Bank & Tr. Ltd.*, 62 N.Y.2d 65, 70 (1984).

In attachment actions, "where the only basis of jurisdiction is the property sought to be attached, such property must have a relationship to the cause of action in order to provide the court with *quasi-in-rem* jurisdiction." *Lopez Fontana v. Argentina Republic*, No. 3 Civ. 08531, 2025 WL 2652734, at *7 (S.D.N.Y. Sept. 16, 2025) (quoting *Silvestre v. De Loaiza*, 820 N.Y.S.2d 440, 442 (N.Y. Sup. Ct. 2006)). "[T]he presence of the property alone does not support jurisdiction if that property which serves as the basis for jurisdiction is completely unrelated to the plaintiff's cause of action." *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, No. 12 Civ. 5754, 2013 WL 6799973, at *11 (S.D.N.Y. Dec. 20, 2013) (cleaned up) (quoting *Glencore AG*, 2010 WL 4323264, at *5).

Here, the parties agree that the Fidelity Account is located in New York. *See* Johnson Decl. ¶¶ 18, 22; Opp'n at 9, 13. And because that account is central to the underlying dispute,

exercising jurisdiction on the basis of it accords with due process. The Fidelity Account relates to plaintiffs' claims in at least three ways. First, it gave rise to plaintiffs' representation of Papagianni insofar as they were hired to assist with "the case for the acknowledgment of [her] inheritance rights" in the Vegleri estate, which consisted of the brokerage account. Agreements at 2. Second, the Agreements stated that if plaintiffs' representation of Papagianni were successful, they would be paid a percentage of the balance in the account. *Id.* at 7. Third, the Agreements implied that Papagianni's payment to plaintiffs would come from the Fidelity Account—they provided that payment would be made "within one (1) month from the date that [Papagianni] will have the right to withdraw cash amounts from the Brokerage account," and that Papagianni "has the obligation to cash the stocks in the Brokerage account so as to pay the Attorneys' fees on [*sic*] a timely manner." *Id.*

Accordingly, "[t]his is not a case in which property is coincidentally located within the State's borders and forms the only relevant link to defendant." *Banco Ambrosiano*, 62 N.Y.2d at 72. Based on the close relationship between the Fidelity Account and plaintiffs' claims, the Court finds that it has *quasi in rem* jurisdiction over that account. *See, e.g.*, *id.* at 70, 72–73 (finding *quasi in rem* jurisdiction based on New York bank account—defendant's "sole contact with this State"—where account was used to "effectuate[] the transaction at issue"); *Desert Palace, Inc. v. Rozenbaum*, 595 N.Y.S.2d 768, 769–70 (1st Dep't 1993) (same, where "sufficient showing of a relationship between the funds seized and the subject matter of the underlying litigation has been made"); *cf. Chaar v. Arab Bank P.L.C.*, 198 N.Y.S.3d 5, 7 (1st Dep't 2023) (contacts insufficient to support *quasi in rem* jurisdiction where "none of the[] activities" related to New York bank account "were connected to plaintiffs' claims"). Because the Fidelity Account "is the property that supports jurisdiction," any future judgment in this case is limited to

that account and "does not impose a personal liability" on Papagianni, as she is "not before the court." *Shaffer*, 433 U.S. at 199.[9]

### III.    Confirmation of Attachment

New York law governs plaintiffs' motion for confirmation of attachment. *See* Fed. R. Civ. P. 64; *see also Cap. Ventures Int'l. v. Republic of Argentina*, 443 F.3d 214, 218–19 (2d Cir. 2006) ("Attachment is available in a federal court . . . under the circumstances and in the manner provided by the law of the state in which the district court is held." (citation omitted)). Under § 6212(a) of the N.Y. C.P.L.R., plaintiffs seeking confirmation of attachment must establish "'by affidavit or other written evidence' that '(1) there is a cause of action; (2) it is probable that plaintiff will succeed on the merits; (3) one or more of the § 6201 grounds for attachment exist; and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.'" *Herzi v. Ateliers De La Haute-Garonne*, No. 15 Civ. 7702, 2015 WL 8479676, at *1 (S.D.N.Y. Oct. 13, 2015) (quoting *Bank of China v. NBM L.L.C.*, 192 F. Supp. 2d 183, 187 (S.D.N.Y. 2002)). And where, as here, an attachment is sought pursuant to § 6201(1), plaintiffs also "must show that the attachment is needed for jurisdictional or security purposes." *Id.*[10]

"The remedy of pre-judgment attachment 'is discretionary with the Court and should be used sparingly.'" *Owens v. Taliban*, No. 22 Civ. 1949, 2022 WL 1090618, at *2 (S.D.N.Y.

---

[9] By separate Order today, the Court directs the parties to address whether the determination that there is *quasi in rem*, but not personal, jurisdiction has consequences for the future course of the case.

[10] N.Y. C.P.L.R. § 6212(b) also requires that the plaintiff "give an undertaking, in a total amount fixed by the court, but not less than [$500]." In the Attachment Order, the Court found that an undertaking of $5,000, representing 0.5% of the attachment's value, was appropriate based on the $1 million value of the attachment and the general practice of courts in this Circuit. Attachment Order at 8–9 (collecting cases). Plaintiffs provided such an undertaking in the form of a bond for $5,000. Mot. at 18; *see* Dkt. 19-5 ("Attachment Bond").

Apr. 11, 2022) ("*Owens I*") (quoting *Katz Agency, Inc. v. Evening News Ass'n*, 514 F. Supp. 423,

429 (S.D.N.Y. 1981)).  However, where "a statutory ground for attachment exists and both need

and likelihood of success are established, [the Court's] discretion does not permit denial of the

remedy for some other reason, at least absent extraordinary circumstances and perhaps even

then." *Cap. Ventures Int'l*, 443 F.3d at 222.  "The standard for confirming an attachment order is

the same as that for granting an *ex parte* order of attachment in the first instance." *Owens v.*

*Taliban*, No. 22 Civ. 1949, 2023 WL 2214887, at \*3 (S.D.N.Y. Feb. 24, 2023) ("*Owens II*"),

*aff'd sub nom. Havlish v. Taliban*, 152 F.4th 339 (2d Cir. 2025).

### A.    Existence of a Cause of Action

The first statutory requirement is that plaintiffs have a "cause of action" for money

damages.  N.Y. C.P.L.R. § 6212(a); *see Owens I*, 2022 WL 1090618, at \*2.  "The standard for

determining whether a cause of action exists for purposes of attachment under New York law is a

liberal one.  Unless the plaintiff's papers clearly establish that the plaintiff must ultimately be

defeated, a cause of action exists." *Thornapple Assocs., Inc. v. Sahagen*, No. 6 Civ. 6412, 2007

WL 747861, at \*3 (S.D.N.Y. Mar. 12, 2007) (quoting *Algonquin Power Corp. v. Trafalgar*

*Power Inc.*, No. 5 Civ. 1246, 2000 WL 33963085, at \*7 (N.D.N.Y. Nov. 8, 2000)).

As the Court found in the Attachment Order, the Complaint brings colorable claims for

breach of contract, quantum meruit, and unjust enrichment.  Compl. ¶¶ 32–52; *see* Attachment

Order at 4–5.  "These are clearly causes of action that, were they to succeed, would result in a

money judgment." *Owens I*, 2022 WL 1090618, at \*3.  Accordingly, plaintiffs satisfy the first

statutory requirement.  *See, e.g.*, *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*,

No. 15 Civ. 9003, 2018 WL 6340600, at \*1 (S.D.N.Y. July 23, 2018) (finding "valid cause of

action" where complaint brought breach of contract claim); *Herzi*, 2015 WL 8479676, at \*2

(same for "breach of contract and related claims"); *Lopez Fontana*, 2025 WL 2652734, at *9 (same for claim of total breach).

### B.    Probable Success on the Merits

Section 6212(a) next requires that plaintiffs "must demonstrate that 'it is more likely than not that [they] will succeed on [their] claims and must show proof stronger than that required to make a *prima facie* case.'" *Lopez Fontana*, 2025 WL 2652734, at *9 (quoting *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007)). "[T]he court must give the plaintiff[s] the benefit of all the legitimate inferences that can be drawn from the facts." *Herzi*, 2015 WL 8479676, at *1 (quoting *Bank of Leumi Trust Co. v. Istim, Inc.*, 892 F. Supp. 478, 482 (S.D.N.Y. 1995)). Where a complaint brings multiple claims, plaintiffs need only demonstrate a likelihood of success on the merits "for at least one of their claims." *Owens I*, 2022 WL 1090618, at *3.

The Complaint brings, *inter alia*, a claim for breach of contract. Compl. ¶¶ 32–40. The elements of a breach of contract claim under New York law are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff[s], (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (citation omitted). As the Court found in the Attachment Order, plaintiffs' allegations, taken together with their supporting declarations and exhibits, demonstrate that they are more likely than not to prevail on the merits of that claim. Attachment Order at 5.

First, plaintiffs are likely to establish the "existence of an agreement." Papagianni and plaintiffs' initial agreement provided that plaintiffs would represent Papagianni in resolving legal issues related to her inheritance in exchange for payment on a contingent basis. Compl. ¶ 19 (quoting Agreements at 2). Approximately two years later, the parties' amended agreement

altered the compensation provision of the initial agreement and stated that all other provisions "remain in full force and effect." *Id.* ¶ 20 (quoting Agreements at 7). Both agreements were signed by Papagianni. *Id.* ¶ 17. Papagianni does not dispute the validity of the Agreements but claims that she was "led to sign" them "without being able to negotiate the terms." Papagianni Decl. ¶¶ 25–26. These vague allegations, however, are insufficient to overcome the evidence establishing an enforceable agreement between the parties. *See Shah v. Mitra*, 98 N.Y.S.3d 197, 204–05 (2d Dep't 2019) ("Generalized contentions that a party felt pressured . . . are insufficient" to void contract based on coercion or duress (citation omitted)). Plaintiffs are thus likely to succeed in showing the existence of an agreement.

Second, plaintiffs are likely to establish that they adequately performed under the Agreements. The Greek court recognized Vegleri's holographic will; the Delaware Court of Chancery found the Greek Judgment valid and enforceable and ordered Fidelity to transfer Vegleri's assets to Papagianni; and Papagianni received these assets in a brokerage account in her name. Compl. ¶¶ 21–22, 24; *see* Greek Judgment at 3; Delaware Judgment at 4; Fidelity Letter. Plaintiffs thus fulfilled their responsibilities under the Agreements. *See* Agreements at 2 (requiring plaintiffs to "conclude and complete . . . the case for the acknowledgment of the inheritance rights of [Papagianni]" and/or collect "all necessary documents for the acknowledgement" of the same). Papagianni's argument to the contrary—that plaintiffs did not fully perform because Papagianni has not "retained the right to withdraw cash amounts from the Fidelity Account" due to tax issues—is unavailing. Papagianni Decl. ¶¶ 33, 37.[11] The

---

[11] Papagianni also argues that plaintiffs did not adequately perform because Johnson was "unable to practice law in Greece" and "outsourced" representation in the Delaware Court of Chancery to a Delaware firm. Papagianni Decl. ¶ 34. Perdiou, however, is authorized to practice law in Greece. Perdiou Decl. ¶ 2. And Johnson's retention of Delaware co-counsel—a fact he acknowledges, Johnson Decl. ¶ 16—is not inconsistent with the terms of the Agreements.

Agreements did not condition plaintiffs' payment on their securing Papagianni's clearance by the Internal Revenue Service ("IRS"). *See* Whitehorn Decl. ¶ 8; Compl. ¶ 27. In addition, the Fidelity Letter undermines Papagianni's claim of a lack of access to the funds in her account, as does Johnson's representation that Papagianni's payment to Delaware co-counsel came from the Fidelity Account, Johnson Decl. ¶ 16. It is thus more likely than not that plaintiffs will be able to show they performed under the Agreements.

Third, plaintiffs are likely to establish that Papagianni breached the Agreements by failing to pay plaintiffs "5% . . . on the [t]otal gross amount" inherited by Papagianni. Compl. ¶ 25; Agreements at 7. That amount was due within one month from the date that Papagianni had "the right to withdraw cash amounts from the Brokerage account." Agreements at 7. As of at least August 8, 2022, Papagianni was able to "withdraw any amount" from the Fidelity Account. Fidelity Letter. But Papagianni has nevertheless refused to pay plaintiffs, Compl. ¶ 36—a fact she does not dispute.

Fourth, plaintiffs are likely to establish damages of $841,489.77—the amount of unpaid fees for legal services related to the recognition of Papagianni's inheritance rights. Compl. ¶¶ 29, 40.

Papagianni counters that plaintiffs are unlikely to prevail because the instant case is duplicative of a Greek action (the "Greek action") plaintiffs brought against her, and that all litigation concerning the fee dispute should be adjudicated in that action. Opp'n at 12–13. She states her intention to file a motion to dismiss under N.Y. C.P.L.R. § 327, which provides: "When the court finds that in the interest of substantial justice the action should be heard in another forum, the court . . . may stay or dismiss the action in whole or in part on any conditions that may be just." The Court cannot find, based on the current record and without briefing on the

issue, that Papagianni is likely to carry the "heavy burden of establishing that New York is an inconvenient forum" under that provision. *Bangladesh Bank v. Rizal Com. Banking Corp.*, 208 N.Y.S.3d 2, 15 (1st Dep't 2024) (citation omitted); *see also Islamic Republic of Iran v. Pahlavi*, 62 N.Y.2d 474, 479 (1984) (noting "competing factors" relevant to *forum non conveniens* determination, which depends "upon the facts and circumstances of each case"). And, contrary to Papagianni's representations, Papagianni Decl. ¶¶ 54–55, the Greek action has been dismissed, thus foreclosing the possibility of adjudicating plaintiffs' claims in that case. Fotopoulou Decl. ¶ 3. The foreign litigation therefore does not undermine plaintiffs' likelihood of success on the merits.[12]

Based on the foregoing, it is more likely than not that plaintiffs will prevail on their breach of contract claim. Accordingly, plaintiffs have demonstrated a probability of success on the merits. *See, e.g.*, *Herzi*, 2015 WL 8479676, at *1–2 (finding, in attorneys' fees dispute, "it is probable that Plaintiff will succeed on the merits" of breach of contract claim); *Thornapple Assocs.*, 2007 WL 747861, at *4 (same as to account-stated claim, where "ample documentary evidence" included retainer agreement); *Lopez Fontana*, 2025 WL 2652734, at *9 (same as to

---

[12] In arguing that the Greek action "should supersede this action," Opp'n at 12, Papagianni also appears to suggest that plaintiffs' claims are barred by *res judicata*. As to Johnson, this argument lacks merit. The exhibits filed in support of Papagianni's opposition to attachment reflect that Johnson's case was dismissed on procedural grounds, referred to another court, and then voluntarily dismissed by Johnson. *See* Dkt. 30-5 at 7 (judgment finding, with respect to Johnson, that "present action . . . is inadmissibly brought before this Court," which lacked subject-matter jurisdiction); Dkt. 30-9 at 2–3 (Johnson's withdrawal of complaint).

The record is less clear as to Perdiou. It appears that the Greek action did not dismiss her claims on procedural grounds, but "as unlawful as to the merits." Dkt. 30-5 at 8. Without more information as to the meaning and significance of that dismissal under Greek law, the Court cannot assess whether such would constitute an adjudication on the merits. But because *res judicata* does not bar Johnson's claims, the Court need not resolve this question at this stage. Because Johnson's claims are likely to succeed on the merits and the other requirements are satisfied, attachment is proper.

total breach claim, where evidence showed defendant repudiated "fee obligations set forth in the Engagement Letter").

### C.    One or More Grounds for Attachment Under § 6201

The third statutory requirement is that "one or more grounds for attachment provided in [§] 6201 exist." N.Y. C.P.L.R. § 6212(a). Relevant here, § 6201(1) provides that an order of attachment may be granted where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." *Id.* § 6201(1). That provision enables a court to "obtain[] jurisdiction over nondomiciliaries." *Bank of China*, 192 F. Supp. 2d at 187.

Section 6201(1) is satisfied here because the Complaint alleges that Papagianni is a foreign (Greek) citizen and non-domiciliary. Compl. ¶ 10; *see also* Attachment Order at 6. Papagianni, in opposing the Motion, does not dispute the applicability of that provision. Accordingly, the third statutory requirement is met. *See, e.g.*, *BSH Hausgerate, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 675 (S.D.N.Y. 2017) (finding grounds for attachment under § 6201(1) where defendant was "Turkish national domiciled outside the state of New York"); *Davila Pena v. Morgan*, 149 F. Supp. 2d 91, 93 (S.D.N.Y. 2001) (same, where defendant was domiciled and regularly resides in Florida); *Lopez Fontana*, 2025 WL 2652734, at *11 (same, where defendant "is in Florida and/or Rome, and . . . has no present intention of returning to New York").

### D.    Amount Demanded Exceeds All Known Counterclaims

The final statutory requirement is that "the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." N.Y. C.P.L.R. § 6212(a). "This requirement is 'satisfied by a statement that the sum claimed from defendants is due over and above all counterclaims which plaintiffs are willing to concede as just.'" *Lopez Fontana*, 2025

19

WL 2652734, at *11 (quoting *Freedman v. Wilson Sec. Corp.*, 295 N.Y.S.2d 789, 791 (1st

Dep't 1968)). "[T]he existence of disputed counterclaims does not defeat an attachment." *Burt*

*Printing Co. v. Middle E. Media Corp.*, 80 F.R.D. 449, 451 (S.D.N.Y. 1978).

Papagianni alleges that plaintiffs failed to perform their duties under the Agreements

because "the Fidelity Account has not been delivered" due to tax issues and all work thus far has

been completed by attorneys retained in Greece. Opp'n at 14. She states her intention to bring

counterclaims such as breach of contract and fraud for damages equal to the value of the

contract, and to seek damages and sanctions against plaintiffs for filing an action that duplicated

the one they brought against Papagianni in Greece. *Id.* Plaintiffs counter that the Agreements do

not mention the IRS; that Papagianni's "conclusory allegations" that plaintiffs failed to complete

their scope of work are "defeated by the terms of the retainer agreements"; and that the Greek

action "is clearly and admittedly terminated." Whitehorn Decl. ¶¶ 9–12.

Because plaintiffs do "not concede to any counterclaims," the final statutory requirement

is met. *Lopez Fontana*, 2025 WL 2652734, at *11; *see, e.g.*, *Bank of Leumi Trust Co.*, 892 F.

Supp. at 482 (counterclaims requirement met where plaintiff contends "counterclaims are

entirely without merit"); *City of New York v. Citisource, Inc.*, 679 F. Supp. 393, 398–99

(S.D.N.Y. 1988) (same, where plaintiff "has contested the[] counterclaims"); *Bank of China*, 192

F. Supp. 2d at 187 n.1 (same, where "the recently-filed counterclaims do seek massive amounts

in damages, [but] the Bank clearly does not concede that those amounts are 'just'").

### E.    Demonstration of Necessity

"[W]here, as here, an order of attachment is sought pursuant to § 6201(1), the plaintiff[s] must show that the attachment is needed for jurisdictional or security purposes." *Herzi*, 2015 WL 8479676, at *1. The Court finds attachment necessary on both grounds.[13]

As to the first, attachment for jurisdictional purposes enables the court, where personal jurisdiction is lacking, "to obtain 'quasi in rem' jurisdiction over a defendant . . . with tangible or intangible property in the state." *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 311 (2010). Because the Court lacks personal jurisdiction over Papagianni, attachment is necessary for jurisdictional purposes. *See, e.g.*, *Cargill, Inc. v. Sabine Trading & Shipping Co.*, 756 F.2d 224, 230 (2d Cir. 1985) (affirming necessity of attachment "to establish and maintain quasi in rem jurisdiction" where "district court lacked in personam jurisdiction"); *Equipav S.A. Pavimentacao, Engenharia e Comercio Ltda. v. Bertin*, No. 22 Civ. 4594, 2024 WL 196670, at *6, 10 (S.D.N.Y. Jan. 18, 2024) ("*Equipav*") (finding attachment necessary to obtain jurisdiction because "use of a New York bank account does not provide a basis for this Court to exercise specific personal jurisdiction"); *Unitech USA, Inc. v. Ponsoldt*, 457 N.Y.S.2d 526, 528 (1983) (finding "necessity of attachment as a basis for quasi-in-rem jurisdiction is compelling" where defendants "vigorously assert that they are not subject to long-arm jurisdiction").

As to the second, when plaintiffs seek to use attachment as a means of security, they must show that "there exists a real threat to plaintiffs' ability to enforce a judgment against defendant so as to justify the drastic remedy of pre-judgment attachment." *Herzi*, 2015 WL 8479676, at *3 (cleaned up) (quoting *Am. Fed. Grp., Ltd. v. Rothenberg*, No. 91 Civ. 7860, 1998 WL 273034,

---

[13] Plaintiffs are silent as to personal jurisdiction but argue that attachment is necessary for security purposes because it is uncertain whether a judgment against Papagianni will be collectable. Mot. at 16.

at *7 (S.D.N.Y. May 28, 1998)).  Under such circumstances, "attachment serves to protect the plaintiff against defendant's ability to pack his bags, abandon his place of convenience within the state, and remain at his permanent residence outside the reach of New York enforcement procedures." *ITC Ent., Ltd. v. Nelson Film Partners*, 714 F.2d 217, 221 (2d Cir. 1983).  Here, plaintiffs argue that the enforceability of any judgment against Papagianni is uncertain because (1) she is a citizen of Greece and a non-domiciliary of the United States; (2) the Fidelity Brokerage account is "an asset that can be easily liquidated and transferred out of the United States to make her 'judgment proof'"; (3) "most of her assets are outside New York"; and (4) she "has shown her inclination to fabricate reasons to excuse her breach of contract and that inclination can easily expand to concealing or secretly transferring assets."  Mot. at 16.

In the Attachment Order, the Court found that plaintiffs adduced sufficient evidence of a "a real risk of the enforcement of a future judgment."  Attachment Order at 7 (quoting *Bank of China*, 192 F. Supp. 2d at 188).  It found that, because most of Papagianni's assets are outside New York and her New York assets are liquid, there is a high likelihood that she could avoid payment of any judgment by transferring the assets in the Fidelity Account out of state.  *Id.*  The Court also noted that Papagianni is a foreign domiciliary without firm economic ties to New York, making it easy for her to make herself judgment-proof in this jurisdiction.  *Id.*

Papagianni's declaration in opposition does not change this analysis.  On the contrary, it fortifies the Court's conclusion because she confirms that her "only contacts within the United States are and are associated with the Fidelity Account," and that she has "no residence in the United States" and "no bank nor any other financial accounts in the United States."  Papagianni Decl. ¶¶ 4–7.  Papagianni claims that she does not present a risk of transferring funds from the Fidelity Account because, for tax reasons, she lacks access to the account.  Opp'n at 13.  That,

however, is unsupported by the record, which reflects that, as of August of 2022, Papagianni was free to "withdraw any amount up to and including the full value of the account(s)," Fidelity Letter, and that she paid her Delaware co-counsel out of the Fidelity Account, Johnson Decl. ¶ 16. Further, even if such tax issues were a barrier to Papagianni's current access, there is no assurance that she will not imminently resolve these, freeing up the assets in the account to be transferred abroad.[14] Accordingly, the Court finds attachment necessary for security purposes. *See, e.g.*, *Herzi*, 2015 WL 8479676, at \*3 (attachment necessary for security purposes where defendant's New York assets were "liquid and thus easily transferable"); *Thornapple Assocs.*, 2007 WL 747861, at \*6 (same, where only asset in New York that could satisfy a judgment was "extremely liquid" and "easily transferable"); *Davila Pena*, 149 F. Supp. 2d at 94–95 (same, where "most of [defendant's] assets are outside New York").

Because attachment is necessary to obtain jurisdiction and to secure satisfaction of a future judgment, the Court finds the necessity requirement satisfied.[15] *See, e.g.*, *Equipav*, 2024 WL 196670, at \*11 (attachment necessary for purposes of obtaining jurisdiction and "also appropriate to ensure that [defendant] does not 'render himself judgment-proof in New York'"

---

[14] Papagianni also argues that attachment is unnecessary because her bad faith attempts to avoid creditors or fraudulent intent have not been shown. Opp'n at 13. Papagianni confuses § 6201(1) with § 6201(3), the latter of which permits attachment based on a defendant's removal of property with bad faith or fraudulent intent. Here, however, plaintiffs seek an order of attachment based on the former provision, and it is thus "irrelevant" that plaintiffs have "failed to allege bad faith or fraudulent intent on the part of" Papagianni. *Thornapple*, 2007 WL 747861, at \*8 ("the showings required by sections 6201(1) and 6201(3) are not identical" (cleaned up)).

[15] Because the Court has found attachment necessary for security purposes, the attachment will remain even if Papagianni submits to personal jurisdiction. *Cf. Marvin L. Walker & Assocs., Inc. v. Mateba Webbing of Canada Ltd.*, 424 F. Supp. 96, 96–97 (S.D.N.Y. 1976) (vacating attachment granted to obtain quasi in rem jurisdiction over defendant after defendant "submitted to full in personam jurisdiction" and security was "not a ground on which an attachment could originally have been granted").

(cleaned up) (quoting *Herzi*, 2015 WL 8479676, at *3)); *see also Belgian Am. Mercantile Corp. v. De Groeve-Marcotte & Fils*, 433 F. Supp. 1098, 1100 (S.D.N.Y. 1977) ("The attachment served the dual purposes of obtaining quasi in rem jurisdiction over the defendant and of securing satisfaction of a judgment ultimately to be entered against the defendant.").

## CONCLUSION

For the foregoing reasons, the Court grants the motion to confirm attachment. The Attachment Order, which secured an amount of $1 million in the account held by defendant Georgia Papagianni at Fidelity Brokerage Services ending in x3822, is confirmed and remains in effect unless and until such time as this Court issues another order releasing the levy.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 19.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: March 3, 2026
        New York, New York